Good morning. Good morning, Your Honors, and may it please the Court. There are two... And your name? Oh, my name is Abbas Kazaronian, representing the petitioner Jordan Marks. Okay, and will you be the only person arguing? For the petitioner, yes, Your Honor. Okay, thank you. Your Honors, there are two questions presented before this Court today. The first question is, did the District Court err in invalidating binding FCC final declaratory rulings on the TCPA in violation of the Hobbs Act? The second question presented today is, did the District Court err in finding that the text communication system used by Crunch is not an automated telephone dialing system when that system stored a list of numbers and en masse, in an automated fashion, sent marketing text messages to those numbers? I believe that the first question presented, I think, can be put to rest a lot quicker than the second one, because I think that every circuit court that has dealt with that issue has found that there is a jurisdictional bar when presented with this issue, which is that the District Court is bound by final declaratory rulings of the FCC. And actually, that was dealt with by this very court in the U.S. West Cummins case versus Hamilton. And in fact, the Ninth Circuit, interestingly, in that case, agreed with the District Court, which conflicted with the FCC opinion, but still found that they are bound by that jurisdictional bar. What do we do about the case ACA International, I guess it is? That's currently pending. So if the D.C. Circuit decides that the FCC was wrong in the way it explained potential or I think the D.C. Circuit could potentially reverse your opinion if they conflict, if it comes out subsequent to your opinion. But if it's purely on the capacity issue, I don't think the capacity issue will change the outcome, because under the petitioner's interpretation of an automated telephone dialing system, we believe that the mechanism used by text communications had the present capacity to be defined as an ATDS. But technically, there is a potential conflict, Your Honor. Do we understand the difference between present capacity and potential capacity? And can you tell me what you mean by those terms? Yes, Your Honor. Present capacity is when the mechanism in question has the actual ability at the time in question when the allegations are brought to being able to do what we define as an automated telephone dialing system. So my iPhone can store numbers, can store a list of numbers, but it right now can't call all those numbers unless I download an app to do so. Does my iPhone have the present capacity to call a list of numbers, or just the potential capacity? It would have the potential capacity, but I would also ask the court to take that hypothetical as an extreme example. And the FCC has actually commented on that and said that's never been presented before. And if Crunch says, well, that's a ludicrous outcome of the interpretation of Mr. Marks, well, there is actually an easy way to resolve that issue. If ever anyone sues under that premise that somebody's cell phone could be an ATDS, I think that case could be stayed under the primary jurisdiction and petitioned to the FCC. And the FCC will be able to deal with that petition because it doesn't... But I'm trying to understand your definition. I mean, so let's say I downloaded the app because there's an app that I can download that will allow me to call every number in my stored contacts list. Yes, Your Honor. ...immediately. Assuming I had downloaded that app, does my phone meet the definition of an ATDS under your interpretation? I mean, does the app have the ability to have a list of numbers and dial them on my iPhone? My iPhone has all the contacts, stores all the contacts. Presumably, I could store a list that was randomly generated even in my iPhone. If I download the app, I just punch a button and it'll call all of the numbers in my contact list. Then, on a technical level, yes. Okay. So can you walk me through the definition and explain how it works? So in 227, it says that the automatic telephone dialing system means equipment, which has the capacity, and you're arguing potential capacity, as I understand your briefs. Is that right? To store or produce telephone numbers to be called. And then what does the last clause, using a random or sequential number generator, modify? I think that modifies the word produce, Your Honor. So you're saying that it has the capacity to store telephone numbers, or it has the capacity to produce numbers using a random or sequential number generator. Is that your... That's precisely the distinction. So you're saying that what Congress intended was that any phone or any piece of equipment that had the capacity to store telephone numbers and to dial such numbers would be an ATDS. Is that what you're saying? Exactly. And that's what the FCC has said in 2003, in 2008, 2015, and in fact two, three weeks ago. Well, it's a little bit ambiguous what the FCC is saying. I mean, they say a range of things. They do say what you're saying, but then they also say some other things as well. So I'm not sure that it's completely clear what their proposed, what their rule is. I think the fact that the ability to dial a list or from a database of numbers in an automated fashion has been a consistency in FCC opinions in 2003, 2008, 2015, and most recently in the enforcement advisory that came out on November 18th. But doesn't that just read, I think the other side argues, that it reads the using a random or sequential number generator basically out of the statute. So that's no longer a limiting factor, because if it can store telephone numbers, I mean, I don't even need to download the app. I just need to have one number. So the capacity to store a telephone number and dial it. Absolutely. So that's everybody's phone, not even my iPhone. Any flip phone has the capacity to store a number and dial it. Potentially. I think there's two points to be made to that. I think, first of all, I'd like to point to the 2008 opinion, FCC opinion, which says, equipment that dials a list of numbers, such as a business's list of customers, rather than dials random or sequential numbers, because the basic function of such dialing equipment is the same, the capacity to dial numbers without human intervention. When the statute was created in 1991, at that point in that society, companies used random or sequentially generated numbers to market people. But that has changed. In 2016, that's almost non-existent. And if we were to hold Crunch's interpretation of the fact that it requires numbers to be randomly or sequentially produced to store them and to dial them, that would eviscerate the TCPA, because nobody uses that technology anymore. So in 2003... Doesn't that just mean that Congress enacted a statute addressing a specific problem? Now that problem has gone away. I don't see why that gives any court license to reinterpret the statute to address a different problem. Well, I think the courts are bound by final declaratory rulings of the FCC absent a Hobbs Act appeal. And furthermore, in 2015, the Congress, the creator of the statute, actually created an exemption for federally backed student loans. Those are not randomly or sequentially generated numbers. Those are targeted numbers. So the question for me, for the court, would be, is why would Congress go out of its way and spend taxpayer money in creating an exemption when, under Crunch's interpretation, there wouldn't be violations anyway? So could the 2015 case, the ACA international case that's currently pending, could limit the FCC's interpretation. Is that correct? On its face, at least as to the capacity portion. But in this particular case, under our interpretation of ATDS, we believe that the text communication system actually had the current capacity. Because it's undisputed in the record that text communication system could store a list of numbers and send en masse text. But isn't ACA also arguing that the ATDS must have the generation capacity? It's not enough merely to store? I mean, that would certainly require us to say that the text communication system was not a TDS, if the DC Circuit agreed with them. Yes. But that also opens up a Pandora's box in the respect that it's also challenging 2003 and 2008 opinions, which were not challenged within the 60-day period, which is required under the Hobbs Act. So what the effect of that is, I don't know. And I think we'd have to have subsequent litigation to see if that challenges that or not. Is there any case, I was curious about that, because 2015 quotes and relies on 2003 and 2012, I think. And if the DC Circuit finds that the 2015 interpretation is invalid, how does that affect? Does anyone know that? I don't think there's any authority on that. I think one argument would be that it's incorporated by reference and it would have an effect. But of course, the other side is that those are closed doors. And I think the second issue is the analysis of automated telephone dialing system is the without human intervention portion of that. I think what's important to understand from the district court's opinion is on the one hand, the district court stated, I'm not bound by the FCC opinion, which obviously we disagree with. But on the other hand, the court relies heavily on without human intervention, which is not in the statute and it's actually a creation of the FCC in analyzing a TDS. Doesn't the word automatic imply that it's without human intervention? I mean, it's called an automatic telephone dialing system. What does automatic mean if not? I would agree with that. The point I was just making is that that standard is created by the FCC. But the district court's analysis on without human intervention was not one that I agree with because the FCC, and in fact, this very court, in the Meyer opinion, the emphasis has always been on the dialing portion of it because the district court was talking about the gathering of numbers and the uploading of the numbers and the creation of the 180 character text messages being sent. But that's not part of the analysis because otherwise a predictive dialer, which the Meyer court in this very court decided a predictive dialer is per se an ATDS. And so hasn't the parties there conceded everything? I thought we never really ruled on anything in Meyer. We just said, oh, they've conceded it. In my, Your Honor, the holding was, if I may. They said, PRA does not dispute that predictive dialers have the capacity as described in the TCPA. But the Meyer opinion also relies firmly on the 2003 opinion that a predictive dialer is an ATDS. But apparently they didn't dispute it. Right. But the 2003 opinion. I'm not sure how precedential that is. I would argue that the 2003, at least, and the 2008 opinions are precedential in that regard. And you're not asking us to hold this for the D.C. Circuit. Holding what? Hold this case. Wait to see what they say. Well, I actually did submit something and I said maybe that would be the prudent thing to do in case to see it because obviously, you know, you would go to the effort and it could have the. So you would be willing for us to hold it. I think we denied your motion initially because it was so close to oral argument, but we could still decide to hold this pending that decision. Do we know when they're, have they heard oral argument or what's the status? Yes, they've heard oral argument, but we're waiting for the written opinion. I mean, the one thing I would like to emphasize, even in the advisory opinion, the enforcement advisory opinion, which is not binding on this court, but it should be given the skid And in that, in that particular definition, most recently, November 18th, the FCC said the term automatic telephone dialing system or auto dialer covers any equipment that has the capacity to store or produce numbers to be dialed and dialed and dialed them without human intervention. That was pretty aggressive interpretation that gave you everything you wanted, right? Exactly right. So I would like to reserve two minutes for my rebuttal, if I may. Thank you so much. Good morning, Your Honor. Ian Ballin for the appellee Crunch San Diego. Your Honors, this case actually may be decided on much simpler grounds. There are three facts, three ways that a system can dial in this case, and we believe that actually it is the appellant's interpretation that would violate the Hobbs Act if there's any question of Hobbs Act violation. The FCC has made very clear in the 2015 order, in paragraph 10 of that order, that they were not, contrary to what the appellants are arguing, they were not purporting to change the definition of an ATDS. Is that where they just quote the language of the statute? I mean, I saw in your briefs, you say they quote the language of the statute. It's like, yeah, they quote the language of the statute, but then they go on and they give all this other language about a very expansive interpretation of the statutory language. There is a lot of stray language in the 2003 order. The 2003 order held that a predictive dialer was an ATDS. In paragraph 10 of the 2015 order, the FCC makes very clear that it held that a predictive dialer was an ATDS because it had the capacity to generate numbers randomly or sequentially. It met the statutory definition. And that's the critical point. There's a lot of district court case law, which is what the appellant relies on, pre-2015, looking at this stray, loose 2003 language, arguing that the FCC expanded the statutory definition. What I have in my notes, I just picked a random something from the 2015, which said, in 2003, we said the equipment need only have the capacity to store or produce telephone numbers. The commission stated that even when dialing a fixed set of numbers, equipment may nevertheless meet the audit dialer definition. And there's lots of language, particularly in the 2012 and the 2015 order, saying even if it's from a set list of numbers, as long as it has the capacity, and then they say, oh, and the dissent says we're using the term capacity as if it's an 8,000 seat stadium. It could be. It has a capacity to be a 20,000 seat stadium. We agree. That's what we're doing. I mean, so they have a very, I don't think you can call it stray language because the whole thrust of their order is to expand the definition and in a very aggressive way. Well, I think that there is stray language. They spend a lot of time talking about the characteristics of a predictive dialer. A predictive dialer dials from a list, but that doesn't mean dialing from a list changes the statutory definition. It doesn't have to have random generation, it says. That's no longer necessary. Well, I don't think that's what the FCC says in the 2015 order. The only court to ever look at that issue was the Third Circuit in the Yahoo v. Dominguez case, which said that although the 2015 order is not a model of clarity, the FCC made very clear that it was not purporting to change the statutory definition. Let me just go for a minute to the statutory language itself. And you heard the statutory interpretation of opposing counsel. I was struggling with what using a random or a sequential number generator modified. He says it modifies produce, which makes sense, reads well, produce using a random or sequential number generator. But I didn't see how you could say to store using a random or sequential number generator. That didn't make sense grammatically. So how do you interpret the statutory language? Well, I think to agree with the appellant's definition, you'd have to move the comma. But tell me how you think it should be interpreted. What does using a random or sequential number generator modify? It means that the numbers that are produced or stored themselves have to be generated randomly or sequentially. So then you would say telephone numbers using a random or sequential number generator, but it doesn't say telephone numbers produced using a random or sequential number generators. So the telephone numbers aren't using anything. So how does that work grammatically? The telephone numbers would have to be the numbers would have to be generated. Number generation is a requirement of the statute. So you want us to read in the word telephone numbers generated using a random or sequential number generator. So you want us to put in the word generated in there. Is that right? No, I wouldn't. I wouldn't change the statutory definition at all. Well, then how do I read telephone numbers using a random or sequential number generator isn't grammatical. So explain to me how I read that sentence. The telephone numbers have to be, okay, to store or produce telephone numbers to be called using a random or sequential number generator. Right, and that's what the statute says. And what does using modify? That clause, that gerund clause, if I remember my high school grammar. I think it is the numbers to be called. The numbers to be called. But the numbers to be called aren't using anything. So something else. I mean, you would have to put in the word generated telephone numbers generated using a random or sequential number generator or some other word because the telephone numbers themselves aren't using anything. I mean, I agree that Congress could have drafted this more carefully. I agree with that. I think the definition that makes the most sense is the FCC's definition and the Third Circuit's definition. The FCC in the 2015 order in paragraph 10 as well as in paragraph 12 and note 46 refers to the capacity to generate numbers randomly or sequentially. The Third Circuit construed that there is the requirement for number generation. And I think this case can be resolved very simply. The facts are undisputed. It's also undisputed between the parties that the plaintiffs do not meet the statutory definition. So if you apply the statute, all parties agree that summary judgment was properly granted. I was having trouble with that. I mean, here we have this piece of equipment which apparently has the capacity to store telephone numbers. And there's testimony from Mr. Assefi that it could, you could import a list of numbers. So presumably you could import a list of numbers that were created by a random number generator. And then there's testimony from Mr. Assefi that a message could go out to all of the numbers in the database. So why doesn't that meet the plain language of the statute? Because dialing from a database is not enough. And that's the critical thing. Why is that? If the database consists of numbers that were randomly generated, doesn't that meet the plain language of the statute? Well, if you delete from the statute the requirement for an automatic telephone dialing system, then dialing from a list would make perfect sense. But it is automatic, right, because it can dial all the numbers with one punch of the button. But then Congress would have said automatic. They said automatic telephone dialing system, and there's the requirement of number generation. That's the... You're saying that the equipment has to be able to generate numbers? Because then they point to the disjunctive store or produce. There's no court that's ever accepted that. The Ninth Circuit would be... The language of that statute say store or produce as disjunctive? Well, I mean, again, it renders superfluous the automatic telephone dialing system. It renders superfluous number generation. Congress could have just X'd everything out and just said produce, because any system that dials would have to produce. So again... So you want us to read it as store and produce? Store or produce. Well, but if it's store or produce, then the whole produce telephone number is using a would go away. That would be one type of equipment, and another type of equipment is one that stores telephone numbers to be called and dials such numbers, I guess, automatically. I mean, that's a possible reading. It's consistent with the language. Right. Again, I think the only court that's looked at this is the Third Circuit. I think the Third Circuit and the FCC in the 2015 order in paragraph 10 were very clear that predictive dialers, even though a characteristic of the predictive dialer is to dial from a list, the predictive dialer is an ATDS because it had the capacity to generate numbers randomly sequentially, even if that capacity was not used. So I'm looking at paragraph 10, and it says, We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce and dial random or sequential numbers. So they seem to be moving. I thought, as I was reading the FCC orders, they seemed to be moving from producing random or sequential numbers to dialing random or sequential numbers. And then by 2015, they sort of gave that up. You know, there's language in the 2015 that just says, Well, they don't even have to dial them randomly or sequentially. They can do it from a set database. It says, Even if not precedently used for that purpose, including when the caller is calling a set list of consumers. So they seem to be migrating into, as long as the piece of equipment can dial a bunch of numbers, even if it's set list, that meets the definition. That's good enough for us. I don't think so. I think the FCC has made clear that there is this requirement for number generation. But what's the last language in the 2015 order that isn't quoting just the language of the statute? Well, I think it is Paragraph 10. I think it's also Paragraph, let me see. What's the best language from Paragraph 10? I mean, I think I just read Paragraph 10, and it's pretty ambiguous. It's to store and produce and dial random or sequential numbers. Store or produce, comma, and dial random or sequential numbers. I mean, so it certainly could store random or sequential numbers. And then it says, even if not presently used for that purpose, including when the caller is calling a set list of consumers. And they say that's good enough. Right. Paragraph 10 is addressing the question of capacity. And there's no question that the language is a little bit sloppy. But in referring to random or sequential numbers, it does encompass that concept of number generation. Well, it doesn't say, it says dial random or sequential numbers. It doesn't say anything about generating them. Is that your best language from 2015? Well, I think it is that language. I think it's also Paragraph 12 and Note 46. Note 46 includes the CFR section. I do think it's significant that in the 2003 order, which the appellant says the FCC broadened the definition, the FCC in 2003 expressly adopted a CFR provision that tracks the statutory language and does not include this concept of dialing from a list. It's very clear from the 2015 order that dialing from a list is a characteristic of a predictive dialer, but a predictive dialer is only an ATDS because it has the capacity to generate random or sequential numbers. Where does it say that, to generate? It has to have the capacity to generate random numbers. Well, there's the reference to random or sequential numbers. Where does it say to generate? You're certainly right that in Paragraph 10 it doesn't say generate. So where does it say that? The Third Circuit in the Dominguez case construing... That's an unpublished opinion, right? It is an unpublished opinion. Okay. So that doesn't help us too much. Okay. Well, looking at the various provisions which include Paragraph 10, which include Paragraph 12 and Note 46, which include Paragraph 111, which talk about capacity, that cumulatively that court had concluded there was the requirement of number generation. There's certainly the requirement of random or sequential numbers. It's not enough that the numbers just be on a list. There is some requirement of random or sequential. And as the district court noted, the statute doesn't grant the FCC the power to change the definition. Now, that's not a Hobbs Act issue, as the appellant says. It's evidence that the appellant's interpretation doesn't make sense. The appellant is wrong in saying that the FCC broadened the definition of the number generation. That's not the definition of the statute. When the FCC itself in the CFR section tracks the statute, and when the FCC itself claims that it's not doing it, and when Congress didn't delegate to the FCC this definition. So let me ask you this. So say we have a statute which is pretty unclear, and a CFR section which basically just tracks the language of the statute. And then we have these orders that have a very expansive and aggressive interpretation. And as I understand the appellant's argument, they say, we're bound by it because of the Hobbs Act, like unless the 2015 case before the D.C. Circuit changes it. Why aren't we, I was trying to see if there were any cases that had said, well, when the agency takes such an interpretation that's so far afield from the statute, a court doesn't have to comply with that. And I didn't see any case holding that. Well, I mean, the Ninth Circuit in the Satterfield case says that under Chevron, the deference is due only to formal rulemaking. There are cases that talk about that. But again, I think it's very clear that the appellant's argument for a more expansive definition to give meaning to loose language, loose language in the FCC orders that goes beyond the statute, that goes beyond what the FCC itself is purporting to do. I think that's where you run into Hobbs Act problems. I think the court has to apply the statute. The facts are undisputed and the plaintiff doesn't dispute that it doesn't meet the statutory definition. Thank you, Your Honor. All right. Thank you for your argument. Your Honor, in response to Mr. Ballon's argument, looking at paragraph 10 of the 2015 FCC opinion, as Your Honor read out, it states within that statement, including when the caller is calling a list of consumers, which is exactly what the text communication system has. Now, in this particular, as it pertains to the TCPA, Congress gave express grant of authority to the FCC to interpret and to regulate the TCPA. And the FCC... Why aren't you, why aren't they expanding the statutory language? And do they have authority to do that? Yes, they do, Your Honor. They do have that authority. And Congress has never objected to their interpretation. And in 2003, the FCC said confirming that the ATDS requirement was to be interpreted broadly to apply to a wide spectrum of evolving technologies. They understood that technology is changing and therefore they have to broaden that interpretation. Otherwise, it would moot the TCPA, as I discussed earlier. As far as the automated telephone... At some point, doesn't it require a rewrite of the statute if it gets too broad? And in that case, aren't they overstepping? I think the overstepping only becomes when the statute is ambiguous. And then, I think at that point, court would have the ability to use the Chevron deference. But if it doesn't create a capricious or a nonsensical reasoning or interpretation of the statute, the Chevron cannot be applied, even if it's one that the courts don't agree with, as was the case in U.S. West Cummins versus Hamilton. I think the emphasis here is on the human intervention portion of it. And I think the facts on the record show that there's multiple ways that this mechanism, the text communication system, sent messages in an automated way, specifically in the list of numbers that existed. So in conclusion, Your Honor, I respectfully request the court to reverse the district court's opinion because the overwhelming evidence looked upon most favorably in favor of Mr. Marks shows that this is an ATDS because it stores numbers and it calls them in an automated fashion. All right. Thank you both for your argument in this matter. It was very helpful. A difficult case. And we appreciate that you were both so prepared. This matter will stand submitted.
judges: Callahan, Bea, Ikuta